## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ERIC BOWERS,

      Plaintiff,

      v.                            Case No. 19-2094-JAR

REECE & NICHOLS REALTORS, INC.,
d/b/a REECENICHOLS, et al.,

      Defendants.

## MEMORANDUM AND ORDER

Plaintiff Eric Bowers brings this copyright infringement action against Defendants Reece & Nichols Realtors, Inc. d/b/a ReeceNichols ("RNR") and Sandra Beck, an RNR real estate agent, alleging they posted his copyright-registered photograph depicting the Kansas City, Missouri skyline on their marketing website without permission.  Before the Court is Plaintiff's Motion for Partial Summary Judgment (Doc. 51) on liability, and Defendants' Joint Motion for Summary Judgment (Doc. 55).  The motions are fully briefed, and the Court is prepared to rule. For reasons discussed below, Plaintiff's motion for summary judgment is denied.  Defendants' motion for summary judgment is granted in favor of RNR on all theories of copyright infringement liability and granted in favor of Beck on the direct and vicarious infringement liability theories.  Defendants' motion is denied on the contributory infringement theory against Beck only.

## I.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[5]

To prevail on a motion for summary judgment on a claim upon which the moving party also bears the burden of proof at trial, the moving party must demonstrate "no reasonable trier of fact could find other than for the moving party."[6]  The facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[7]  "Where, as here, the parties file cross-motions for summary judgment, we are entitled to assume that no evidence

---

[1] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

[6] *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015).

[7] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[8]

Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[9]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[10]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[11]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[12]

## II.    Uncontroverted Facts

In accordance with the above-stated standards, the Court does not consider facts presented by the parties that the record does not support or that are not relevant to the legal issues presented.  Nor does the Court consider legal arguments and conclusions included in the parties' statements of fact.  To the extent the parties object to evidence based on the credibility of the witnesses, the Court will not resolve the conflict, as that is exclusively within the province of the factfinder.  Finally, the Court declines to resolve a discovery dispute in the context of resolving

---

[8] *James Barlow Family Ltd. P'ship v. David M Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).

[9] Fed. R. Civ. P. 56(c)(4).

[10] *Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (quoting Fed. R. Civ. P. 1).

[12] *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

the uncontroverted facts on a summary judgment motion.[13]  To the extent Plaintiff claims that

Beck's interrogatory responses are false, that is not an issue to be resolved on summary judgment

as it goes to the credibility of a witness.

The following material facts are either stipulated or uncontroverted.  Plaintiff Eric

Bowers is a professional photographer who creates artistic images of architecture and urban

revitalization.  Plaintiff created a photograph of the downtown Kansas City skyline in 2013 (the

"Work").  The Work is depicted below:



The Work is copyrighted.

Defendant Beck entered into an Independent Contractor Agreement with Defendant RNR

to sell real estate.  Beck also signed and agreed to abide by RNR's "Advertising Policies and

---

[13] *See* Fed. R. Civ. P. 37.

Guidelines."[14]  The guidelines allow agents to have their own websites, so long as the terms are not "confusing to the public or give the impression the agent or team is its own brokerage company."[15]  Beck was not required to obtain RNR approval for her marketing materials.  Beck does most of her business at Lake Quivira, Kansas.  RNR generates its revenue through broker's fees received from sales of properties sold by its real estate agents; therefore, RNR earns a fee from Beck's real estate sales.

Beck has an RNR website.  Beck also has an LLC called "Sandi Beck Luxury Properties, LLC."  Beck is unaware of anyone using the name of her LLC without her permission.

Ellen Kelley was a business partner with Beck; she too entered into an Independent Contractor Agreement with RNR.  Kelley worked on marketing for the partnership.  In February 2017, Kelley worked on a website template for them that they hoped would generate business in the Greater Kansas City market, paradisehomeskc.com.  Kelley owned the website domain name. Kelley used a screen shot of the Work and inserted it into the template as a "placeholder" in order to present it to Beck.  She intended to either purchase the Work, or "shoot a similar one."[16] The website never went "live."  Kelley felt the website design was "over her head" and decided not to continue to build it.[17]

Third-party Dynamic Web Products ("Dynamic") offers search engine optimization ("SEO") and builds custom websites.  To provide SEO to its clients, Dynamic creates a website called a "campaign website" that matches the "look and feel" of its client's existing website.[18]  It

---

[14] Doc. 52-11.

[15] *Id.*

[16] Doc. 52-12 at 6:3–13.

[17] *Id.* at 10:10–12.

[18] Doc. 52-9 at 23:15–16.

drafts the text of the campaign website based on key words provided by the client.  Dynamic's
proprietary process then promotes the campaign website to the top of search engine results.
Potential customers access the campaign website and are seamlessly directed to the client's
existing website.  This allows its clients to take advantage of the SEO without modifying their
existing website or giving up account or proprietary information for their existing website.

 In February 2017, Beck received a cold call from a company soliciting marketing
services that turned out to be Dynamic.  She signed up and provided key words to facilitate SEO.
Beck and Kelley had a phone call with the company where they chose the keywords for the SEO,
but at that time, Beck did not know the name of the company that contacted her and charged her
approximately $3000 for their work.

 Beck's credit card statement shows approximately $3000 in charges from
"PROTECTYOURPERSONALLAS VEGASNV."[19]  The name of Beck's LLC, her RNR
website, name, email address and physical address are listed on an Order Form submitted to
Dynamic by Beck dated February 6, 2017, that was electronically signed by Beck.  The terms
and conditions of the Order Form expressly state that the charges are for building a website, but
they do not reference Dynamic's name.[20]  The form was emailed to Beck from the address
"orders-onlinesiteexposure@onlineclientservices.com."  Dynamic also generated invoices
addressed to Beck at her Lake Quivira home address.  The charges listed on Beck's Capital One
credit card statement and the invoices from Dynamic are in the same amount.

 Dynamic, through RKR Equipment, LLC, purchased the sandibeckluxuryproperties.com
website and posted the Work there.  The Work appeared on Beck's Dynamic website without

---

[19] Doc. 62-3 at 1.

[20] Doc. 60-6 at 2–3.

Plaintiff's permission and without a license from June 2017 to sometime in March 2018, along with Beck's professional photo, Beck's phone number, and a promotional video for Beck created by RNR.  RNR's name also appeared on the website.  The website advertises the specific market of Lake Quivira where Beck lists and sells RNR residential properties.

Dynamic never received complaints from Beck about the website.  Dynamic never communicated with RNR, and RNR did not review or approve the website.  RNR had no knowledge of the Work or the website until after this lawsuit was filed.  Beck did not generate any leads or sales from the sandibeckluxuryproperties.com website and none of her customers ever mentioned that website to her.

## III.    Discussion

Plaintiff alleges copyright infringement under 17 U.S.C. § 501.  The elements of a direct copyright infringement claim are "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[21]  The plaintiff bears the burden of proving both elements.[22]  An infringer may also be secondarily liable through a theory of contributory or vicarious infringement.[23]

According to the Pretrial Order, Plaintiff alleges copyright infringement against Defendants under three theories: (1) direct infringement; (2) contributory infringement based on the direct infringement by Dynamic and/or Kelley; and (3) vicarious infringement based on the direct infringement by Dynamic and/or Kelley.  Defendants move for summary judgment on all

---

[21] *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1178 (10th Cir. 2009) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

[22] *Id.*

[23] *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, LTD*, 545 U.S. 913, 930 (2005).

claims.  Plaintiff moves for partial summary judgment on liability.  The Court addresses each theory of infringement in turn.

### A.     Direct Infringement

Plaintiff claims that Defendants directly infringed his copyright by using the Work on the sandibeckluxeryproperties.com website.  In order to be liable for direct infringement, Plaintiff must show that the Defendants themselves made or published the infringing material.[24]  Defendants do not challenge the validity and ownership of Plaintiff's copyright but argue there is no evidence demonstrating they themselves copied the Work and put it on the website.

Plaintiff relies on his own declaration and on Dynamic 30(b)(6) representative Robert Raskin's declaration and testimony.  During his deposition, Raskin could not say for certain how Dynamic acquired the Work, but advanced a few theories: (1)  Beck, "or someone within her office" transmitted the photo to Dynamic; (2) the photo must have been on Beck's RNR website because Dynamic would have built the campaign site based on the look and feel of that website; or (3) Dynamic got the Work from the website Kelley worked on.[25]

Viewing Raskin's testimony in the light most favorable to Plaintiff would not lead a reasonable jury to conclude that RNR copied the Work.  It is uncontroverted that Dynamic and RNR never communicated.  All three of Raskin's theories about how Dynamic obtained the Work involved Beck and not RNR.  And the statement in Plaintiff's own declaration that Defendants put his work on the website is conclusory; the declaration does not establish this

---

[24] *See id.* ("[t]he Copyright Act does not expressly render anyone liable for infringement committed by another" (quoting *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 434 (1984)).

[25] Raskin states in his Declaration that "Dynamic acted at the instruction of Ms. Beck to use the photograph," Doc. 52-5 ¶ 12, but clarified or corrected this and several other paragraphs from the declaration during his deposition.  When asked about ¶ 12, he clarified that the photograph "might have been on her website.  I don't know.  I don't know where we would have gotten this picture from if it wasn't from her website, because we couldn't even find it when we looked for it."  Doc. 52-9 at 113:1–114:6.

statement is based on personal knowledge and therefore it must be disregarded on summary judgment.[26]   In sum, there is no evidence that RNR copied the Work or was even aware of the website Dynamic created until after this lawsuit was filed.[27]   Thus, summary judgment is granted in favor of RNR on Plaintiff's direct infringement claim.

As for Beck, Raskin testified that he does not know where Dynamic obtained the Work, although he assumes it came from Beck.   While it is controverted whether the Work ever appeared on Beck's RNR website, it is uncontroverted that Dynamic, and not Beck, copied the Work and put it on the sandibeckluxeryproperties.com website, the only website for which Plaintiff claims copyright infringement.   Because it is uncontroverted that Beck did not herself copy the Work and place it on that website, summary judgment is granted in favor of Beck on Plaintiff's direct infringement claim.

### B.      Secondary Liability for Copyright Infringement

Two doctrines of secondary liability have "emerged from common law principles and are well established in the law."[28]   "One infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."[29]   "[B]oth contributory and vicarious infringements require someone to have directly infringed the copyright."[30]

---

[26] *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (citing *Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994)).

[27] Plaintiff argues that RNR's advertising policies controvert this fact.   But just because RNR had certain guidelines that applied to its independent agents' advertising efforts does not mean that it knew of these specific advertising efforts, and whether they complied or did not comply with those guidelines.   There is no evidence presented by Plaintiff that controverts RNR's affidavit that it was not aware of the Work or the website prior to the filing of this action.

[28] *Metro-Goldwyn-Mayer,* 545 U.S. at 930.

[29] *Id.* (citations and footnote omitted).

[30] *La Resolana*, 555 F.3d at 1181 ("Because La Resolana failed to establish that Reno, Inc. infringed its copyright, La Resolana's claim of indirect infringement against SWIT necessarily fails.").

### 1.      Contributory Infringement

"Contributory copyright infringement is derivative of direct copyright infringement.  It occurs 'when the defendant causes or materially contributes to another's infringing activities and knows of the infringement.'"[31]  "One infringes contributorily by intentionally inducing or encouraging direct infringement."[32]  "One way of establishing contributory liability is by showing a defendant 'authorized the infringing use.'"[33]  To prove contributory infringement, a plaintiff must show that the defendant took "active steps" to encourage direct infringement.[34]  This requires "purposeful, culpable expression and conduct."[35]  Therefore, to show contributory infringement, plaintiff must allege: (1) direct copyright infringement by a third-party; (2) knowledge by the defendant of the direct infringement; and (3) material contribution to the infringement.[36]

It is uncontroverted that Dynamic directly infringed the Work by placing it on the sandibeckluxeryproperties.com website.  Defendants move for summary judgment on the knowledge and material contribution elements of Plaintiff's contributory infringement claim.  Contributory liability requires evidence of either actual knowledge, or its equivalent, willful blindness.[37]  This means Plaintiff must demonstrate "more than a generalized knowledge by [a

---

[31] *Savant Homes, Inc. v. Collins*, 809 F. 3d 1133, 1146 (10th Cir. 2016) (quoting *Diversey v. Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013)).

[32] *Metro-Goldwyn-Mayer,* 545 U.S. at 930.

[33] *Diversey*, 738 F.3d at 1204 (10th Cir. 2013) (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997)).

[34] *Metro-Goldwyn-Mayer,* 545 U.S. at 936.

[35] *Id.* at 987.

[36] *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1171 (9th Cir. 2007); *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir 2004); *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984); *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *Shell v. Am. Family Rights Ass'n*, No. 09-CV-00309-MSK-KMT, 2010 WL 1348548, at * 16 (D. Colo. Mar. 31, 2010).

[37] *BMG Rights Mgmt. (US) LLC v. Cox Commc'n, Inc.*, 881 F.3d 293, 308 (4th Cir. 2018); *Ludvarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072–73 (9th Cir. 2013).

defendant] of the possibility of infringement,"[38] and it is not enough for Plaintiff to demonstrate that Defendants "should have known" of the direct infringement.[39]  To show material contribution, Plaintiff must demonstrate that Defendants provided "substantial assistance" to Dynamic.[40]

### a.    RNR

As to RNR, Defendants point to the absence of evidence demonstrating it had actual knowledge of or was willfully blind to Dynamic's infringement.  It is uncontroverted that there was no contact between Dynamic and RNR prior to this litigation and that RNR had no knowledge about Beck's arrangement with Dynamic, or the existence of her new website.  Beck was not required to obtain RNR approval for her marketing materials, and RNR denies ever approving the website.  Plaintiff provides no evidence to controvert this evidence.  Therefore, a reasonable jury could not find that RNR met the knowledge or material contribution elements of a contributory infringement claim.  Summary judgment is granted in favor of RNR on Plaintiff's contributory negligence claim.

### b.    Beck

Defendants also maintain there is no evidence that Beck was aware of Dynamic's direct infringement until after this lawsuit was filed, and therefore she could not have substantially assisted Dynamic in its infringement.  Defendants point to Beck's declaration and testimony that she had not seen the Work or Dynamic's website before Plaintiff filed this lawsuit.  In fact, Beck denies knowing Dynamic's identity until after this lawsuit was filed.  There is evidence that supports her assertion—neither the Order Form electronically signed by Plaintiff nor her credit

---

[38] *Ludvarts*, 710 F.3d at 1072.

[39] *BMG Rights*, 881 F.3d at 310.

[40] *See, e.g.*, *Abbey House Media, Inc. v. Apple, Inc.*, 66 F. Supp. 3d 413, 419 (S.D.N.Y. 2014).

card statement reference Dynamic's name, and she denies receiving the invoices that include

Dynamic's name.  Beck explains that for these reasons, she denied that the Work was on her

website and failed to identify Dynamic in her interrogatory responses.  Beck denies

communicating with Kelley about the Work or being aware that Kelley used it on the template

she was designing in February 2017.

Plaintiff maintains that Raskin's testimony controverts Defendants' evidence on

knowledge and could support a finding that Beck's RNR website contained the Work, despite

Beck's and RNR's denials that the Work ever appeared there.  Plaintiff also points to the

Dynamic Order Form Beck signed stating that her charges include building a campaign website,

and to the fact that the credit card charges she paid match the amount on Dynamic's invoices.

Plaintiff further argues that Kelley's use of the Work can be imputed to Beck because Kelley

testified that she showed Beck the website template, including her screen shot of the Work,

before abandoning the project.

Plaintiff's evidence is plainly insufficient to meet his heavy summary judgment burden as

the party who bears the burden of proof at trial that no reasonable trier of fact could find other

than for Plaintiff.  A reasonable jury could believe Beck's testimony and conclude that she had

no actual knowledge of Dynamic's infringement.

As for Defendants' motion, Plaintiff has demonstrated a genuine issue of material fact on

actual knowledge and material contribution.  When viewed in the light most favorable to

Plaintiff, a reasonable jury could believe Raskin and Kelley's testimony and find that either Beck

included the Work on her RNR website, which Dynamic then used for the campaign website, or

that Kelley on behalf of Beck directed Dynamic to model the new website on her template that

included the Work, which Kelley had previously shown Beck.  According to Raskin, Dynamic's

process involved using the client's existing website to build the new one and there is no other way Dynamic would have obtained the photograph if Beck did not directly provide it, either directly or through her RNR website.  Moreover, Kelley admitted to taking a screen shot of the Work when she attempted to build a website for the partnership and showed it to Beck before realizing that she was in over her head.  Raskin testified that he recalls "mirroring" the campaign site to match Beck's RNR website and later "re-mirror[ing] the site to match Ellen's site," but lacks documentation of its process.[41]  Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could discredit Beck's testimony and find that she was aware of the photograph because Kelley showed it to her, and that either she or Kelley made the Work available to Dynamic for copying through their existing websites.  This evidence would be sufficient to demonstrate actual knowledge and material contribution.

Defendants argue that Raskin's testimony is unreliable due to inconsistencies with his declaration, but the Court may not consider these inconsistencies on summary judgment; it is a matter Defendants can present at trial to impeach the witness.  "It is axiomatic that a judge may not evaluate the credibility of witnesses in deciding a motion for summary judgment."[42]  Instead, the Court views the evidence in the light most favorable to Plaintiff and thus finds genuine issues of material fact preclude summary judgment in favor of Beck on the knowledge and material contribution elements of Plaintiff's contributory infringement claim.

### 2.      Vicarious Infringement

"Vicarious liability attaches when the defendant 'has the right and ability to supervise the infringing activity' and 'has a direct financial interest in such activities.'"[43]  In order to establish

---

[41] Doc. 60-7 at 48:13–49:24.

[42] *Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000).

[43] *Id.* (quoting *Gershwin*, 443 F.2d at 1162).

the right and ability to supervise the infringing activity, a plaintiff must also show a third party's direct infringement.[44]  "A defendant may be vicariously liable even when he or she is not aware of the infringing activity."[45]  There is no dispute as to Dynamic's direct infringement.  Instead, the parties dispute whether Defendants had a direct financial interest in the infringing website, and whether they had the right and ability to supervise Dynamic.  Because the Court finds that there is no genuine issue of material fact that Defendants lacked a financial interest in the infringing website, it need not address whether they had the right and ability to control the infringing conduct.[46]

The critical inquiry on the direct financial benefit prong of the vicarious liability claim is "whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps."[47]  Plaintiff can make this showing by demonstrating that "users are attracted to a defendant's product because it enables infringement and that its use of the product for infringement financially benefits the defendant."[48]  Defendants argue there is no evidence of financial benefit to either Defendant from the Dynamic website.  Plaintiff relies on the Ninth Circuit's decision in *Ellison v. Robertson*[49] to argue that placing the Work on Dynamic's website helped draw in customers for RNR and Beck, amounting to a financial benefit.

---

[44] *See Perfect 10*, *Inc. v. Vista Intern. Serv. Ass'n*, 494 F.3d 788, 803 (9th Cir. 2007).

[45] *Diversey*, 738 F.3d at 1204 (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996)).

[46] The Court again notes the absence of evidence that RNR had knowledge of the Dynamic website or that it was required to or did approve the website prior to it going live.

[47] *Tomelleri v. Zazzle, Inc.*, No. 13-cv-2576-EFM-TJJ, 2015 WL 8375083, at *15 (D. Kan. Dec. 9, 2015) (quoting *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004)).

[48] *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 435 (S.D.N.Y. 2011).

[49] 357 F.3d 1072 (9th Cir. 2004).

In *Ellison*, the court explained that "[f]inancial benefit exists where the availability of infringing material 'acts as a "draw" for customers'"[50] and that "[t]here is no requirement that the draw be 'substantial.'"[51]  The defendant in that case, America Online, Inc, ("AOL"), received no direct financial benefit from plaintiff's copyrighted short stories when a third party posted them on a file-sharing network that made them accessible through internet service providers worldwide, including AOL.[52]  The *Ellison* court held that a reasonable juror could not find that AOL received a direct financial benefit from providing access to infringing short stories because there was no evidence that AOL "attracted or retained subscriptions because of the infringement or lost subscriptions because of [its] eventual obstruction of the infringement."[53]  In so finding, the court noted "[t]he essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of *how substantial* the benefit is in proportion to a defendant's overall profits."[54]

Importantly, *Ellison* discussed what amounts to a customer "draw" versus other customer services:

> We recognize, of course, that there is usually substantial overlap between aspects of goods or services that customers value and aspects of goods or services that ultimately draw the customers. There are, however, cases in which customers value a service that does not act "as a draw." . . .  Thus, the central question of the "direct financial benefit" inquiry in this case is whether the infringing activity constitutes a draw for subscribers, not just an added benefit.[55]

---

[50] *Id.* at 1079 (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001)).

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.* (emphasis in original).

[55] *Id.*

The Ninth Circuit deemed the ability to view infringing content an "added benefit" to AOL customers, not the reason customers subscribed to AOL.[56]  Therefore, the court found that the infringing activity conferred no direct financial benefit on AOL.[57]

Here, the analysis is even more straightforward.  The website advertised the specific market of Lake Quivira where Beck lists and sells RNR residential properties.  There is no evidence suggesting customers visited Beck's Dynamic website for the purpose of viewing the Work—a photo of the Kansas City skyline.  In fact, it is uncontroverted that Beck did not generate any leads or sales from the sandibeckluxuryproperties.com website and none of her customers ever mentioned that website to her.  And, although RNR generates revenue through broker's fees from real estate sales, there is no evidence that RNR generated any revenue through the website.  Given this uncontroverted evidence, a reasonable jury could not find that the Work did anything more than add to the overall attractiveness of Beck's website.

The facts here are analogous to those in another Ninth Circuit decision, *Erickson Productions, Inc. v. Kast*.[58]  There, the court determined that the *Erickson* defendant—a real estate wealth management company—did not have a direct financial interest in infringing photographs posted on its website by a web developer it hired to create its website.[59]  Although the plaintiff argued "the photographs enhanced the general attractiveness of [defendant]'s website to customers, and thereby 'drew' visitors to purchase [defendants] services," the court reasoned that "[i]f [defendant] had a direct financial interest in every piece of content on [its]

---

[56] *Id.*

[57] *Id.*

[58] 921 F.3d 822 (9th Cir. 2019).

[59] *Id.* at 830.

16

website that arguably made the website marginally more attractive or presentable, then the requirement of a causal link would be erased."[60]

Also instructive is Judge Melgren's decision in *Tomelleri v. Zazzle*.[61]  In *Zazzle*, an illustrator sued Zazzle.com, a company that sells customizable merchandise such as t-shirts and mugs, because Zazzle.com stored and printed his illustrations when customers uploaded them to the website for print on their custom merchandise.  Zazzle.com required each customer to verify he or she has the necessary rights to upload images for use on their custom products.  The court found Zazzle.com did not have a direct financial interest in the infringing illustrations because the infringement itself was not a customer draw to Zazzle.com.[62]  Instead, the court found the evidence before it suggested customers were attracted to the website because of the ability to apply their own artwork to products.[63]

Both *Erickson* and *Zazzle* support the Court's conclusion that there is no genuine issue of material fact as to whether Defendants obtained a financial benefit from Dynamic's infringement.  Absent evidence that the Work itself generated customers for Defendants rather than adding to the overall attractiveness of the website, or that the website generated customers

---

[60] *Id.*; *cf. Klein & Heuchan, Inc. v. Costar Realty Info., Inc.*, 707 F. Supp. 2d 1287, 1299 (M.D. Fla. 2010), *aff'd*, 425 F. App'x 833 (11th Cir. 2011) (following the Ninth Circuit's reasoning that "not every benefit is a direct financial benefit").  The cases cited by Plaintiff are inapposite.  *Warner Bros. Records Inc. v. Charter Commc'ns, Inc.*, No. 19-CV-00874-RBJ-MEH, 2019 WL 5387099, at *1, *4 (D. Colo. Oct. 21, 2019), *adopted by Warner Records, Inc. v. Charter Commc'n, Inc.*, No. 19-CV-00874-RBJ-MEH, 2020 WL 1872387, at *1 (D. Colo. Apr. 15, 2020) (finding subscription fees to defendant's high-speed internet "drew infringers to its service by touting specific features of its service that are attractive to copyright infringers and by adopting a policy of non-enforcement."); *Broadcast Music, Inc. v. Carey-On Saloon, LLC*, No. 12-CV-02109-RM-MJW, 2014 WL 503447, at *1 (D. Colo. Feb. 7, 2014) (addressing whether status as a corporate officer established a direct financial interest to hold the officer liable for the corporation's infringement); *Grady v. Lambert*, No. 13-CV-02828-MSK-MJW, 2015 WL 5697316, at *1 (D. Colo. Sept. 29, 2015) (finding the defendant liable for direct infringement and therefore not reaching vicarious liability claim).

[61] No. 13-02576-EFM-TJJ, 2015 WL 8375083, at *1 (D. Kan. Dec. 9, 2015).

[62] *Id.* at *15.

[63] *Id.*

at all for that matter, vicarious liability cannot lie, and summary judgment is warranted in favor of Defendants on this theory of relief.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Partial Summary Judgment (Doc. 51) is **denied**.

**IT IS FURTHER ORDERED** that Defendants' Joint Motion for Summary Judgment (Doc. 55) **is granted in part and denied in part**.  Defendants' motion is granted in favor of RNR as to all theories of copyright infringement and granted in favor of Beck on the direct and vicarious infringement theories.  Defendants' motion is denied on the contributory infringement theory against Beck only.

**IT IS SO ORDERED.**

Dated: June 4, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE